# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Criminal Action No. 98-235-6 |
| | ) Civil No. 05-866 (RCL) |
| | ) |
| DANIEL STOVER, | ) |
| | ) |
| Defendant. | ) |

FILED

SEP 19 2008

Clerk, U.S. District and
Bankruptcy Courts

## MEMORANDUM OPINION

Pending before the Court is petitioner Stover's motion [745] pursuant to 28 U.S.C. § 2255 to vacate his conviction and sentence. In addition, motions requesting the Court to order the production of trial transcripts to petitioner [789] and requesting the Court to stay proceedings [802] while petitioner challenges his state court convictions are pending. After carefully reviewing the petitioner's motions, the United States response, the entire record herein, and applicable law, the Court will GRANT petitioner's § 2255 motion in part and DENY it in part. The petitioner is entitled to a resentencing to recalculate the amount of drugs that were attributable to him. However, all other claims are time barred, procedurally barred, and/or meritless and therefore are rejected and DENIED. The petitioner's motions for production of his trial transcript and his request to stay the proceedings are also DENIED.

## I.    BACKGROUND

### A.    Factual History

1

The petitioner and other associates were part of a large heroin distribution organization that from 1995 to 1998 imported and distributed heroin in Washington, D.C., and Baltimore, Maryland. *United States v. Stover*, 329 F.3d 859, 863 (D.C. Cir. 2003). Through recorded phone conversations, the government learned that petitioner Stover and Charles Harrison were primarily responsible for "cutting" the heroin to purity levels that heroin users in the area could tolerate. *Id.* Stover resided at 2602 Brinkley Road in Fort Washington, Maryland, and undertook his cutting operations there. *Id.*; (Gov't's Opp'n at 8–9.) In addition to cutting the heroin, Stover also made deliveries of the packaged drugs to individual distributors, kept track of how much each distributor owed, and made recommendations regarding whether or not particular distributors should be cut out of the operation. *Stover*, 329 F.3d at 863; (Gov't's Opp'n at 10.)

During a search of the apartment at 2602 Brinkley Road on July 10, 1998, the FBI found Stover alone in the apartment. (*Id.* at 16.) In addition, the agents found heroin, guns, cash, photographs linking the defendants to the conspiracy, cutting agents, scales, and small baggies of heroin packaged for street distribution. *Stover*, 329 F.3d at 863.

As a result of the investigation, Stover was indicted for conspiracy to possess with intent to distribute heroin, in violation of 21 U.S.C. § 846. He presented three witnesses at his trial. His sister testified that the defendant worked at Harrison's liquor store and that she and her brother lived temporarily in the Brinkley apartment but had moved out at the end of 1997. (Gov't's Opp'n at 17.) One of Stover's friends testified that he, not Stover, was the person depicted in photographs found in the Brinkley apartment. (*Id.* at 18.) In addition, an investigator for Stover testified concerning several of the intercepted phone calls. (*Id.*) Following the trial, the jury returned a verdict of guilty on January 7, 2000. Stover was sentenced to 360 months.

2

B.      **Procedural History**

Following petitioner's trial, he directly appealed his conviction to the D.C. Circuit.  The

Circuit rejected his challenges and affirmed his conviction.  *Stover*, 329 F.3d at 877.  On April

25, 2004, Stover filed the present *pro se* action, in which he collaterally attacked his detention

under 28 U.S.C. § 2255.  His counsel also filed a § 2255 challenge on that date.  Approximately a

year later, on April 26, 2006, Stover filed an amended § 2255 petition.  The § 2255 petitions are

what concerns the Court presently.


II.     **ANALYSIS**

A.      **Legal Standard for Motions under § 2255**

Section 2255 permits a prisoner serving a federal sentence to move the court to "vacate,

set aside, or correct the sentence."  28 U.S.C. § 2255.  Section 2255 authorizes the sentencing

court to discharge or resentence a prisoner if the court concludes that it was without jurisdiction

to impose the sentence, the sentence was in excess of the maximum authorized by law, or the

sentence is otherwise subject to collateral attack.  *Id.*  Relief under section 2255 is an

extraordinary remedy and is generally only granted "if the challenged sentence resulted from 'a

fundamental defect which inherently results in a complete miscarriage of justice,' or 'an omission

inconsistent with the rudimentary demands of fair procedure.'"  *United States v. Pollard*, 959

F.2d 1011, 1020 (D.C. Cir. 1992) (citations omitted).  The defendant carries the burden of

sustaining his contentions by a preponderance of evidence.  *United States v. Simpson*, 475 F.2d

934, 935 (D.C. Cir 1973).

B.      **Defendant's Claims that are Time-Barred**

Section 2255 has a one-year limitation period, which runs from the latest of:

1) the date on which the judgment of conviction becomes final;
2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such government action;
3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255.

In this case, the first method of calculating the one-year limitations period is applicable.

A conviction becomes final when the Supreme Court "affirms [the] conviction on the merits on

direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari

petition expires." *Clay v. United States*, 537 U.S. 522, 527 (2003).

The petitioner's conviction became final on April 26, 2004, when, after the D.C. Circuit

affirmed his conviction on direct appeal, the Supreme Court denied his petition for a writ of

certiorari. *United States v. Stover*, 329 F.3d 859 (D.C. Cir. 2003), *cert. denied*, 541 U.S. 1018

(2004). Therefore, Stover had until April 26, 2005, to file his § 2255 petition. On April 25,

2005, Stover, through counsel John Briley, filed a § 2255 motion in which he argued that his

conviction should be vacated because of the retroactive application of *United States v. Booker*,

543 U.S. 220 (2005). The petitioner also filed a *pro se* motion in which he argued that his

conviction should be vacated because of 1) the retroactive application of *United States v. Booker*,

543 U.S. 220 (2005); 2) lack of jurisdiction due to improper venue, 3) the government's failure

to provide exculpatory evidence; 4) improperly admitted evidence; 5) improper jury instruction;

6) insufficient evidence to support his conviction; 7) improper handling of a jury note by the

4

Court; 8) ineffective assistance of trial counsel; 9) and ineffective assistance of appellate counsel. The government concedes that the original *pro se* motion and the motion filed through counsel were filed within the applicable limitations period. (Gov't's Opp'n at 21.)

On April 24, 2006, the petitioner filed an amended § 2255 motion in which he reiterated some of his previous claims and made several new claims. The amended 2006 motion was filed outside the limitations period and therefore is time-barred and struck from the record to the extent that the new claims do not "relate back" to the claims that were timely made. *United States v. Hicks*, 283 F.3d 380, 387 (D.C. Cir. 2002).

Rule 15 of the Federal Rules of Civil Procedure prescribe how section 2255 pleadings can be amended under the relation back doctrine: An amendment relates back when the claim asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth in the original pleading. *Id.* at 383; Fed. R. Civ. P. 15(c)(2). In the habeas context, a claim "does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Mayle v. Felix*, 545 U.S. 644, 650 (2005). As the government's opposition brief correctly notes (Gov't's Opp'n at 24, 60), the petitioner's claims in his amended § 2255 that his indictment was invalid because it was not signed by the foreperson or the United States Attorney, that the Court erred in denying his motion for a severance, that the Court's purported improper questioning of witnesses signaled the Court's endorsement of their testimony, that the prosecutor made improper arguments during closing argument, that the Court erred in refusing to grant a new trial based on one of the juror's knowledge of one of the informants, and that the Court erred in its handling of a note from a juror indicating that a juror recognized a government informant,

were claims raised for the first time in his April 2006 amended complaint and are supported by facts that differ in both time and type from the petitioner's timely claims.  As a result, these claims are time-barred and are dismissed.

In addition, many of the petitioner's claims that his trial and appellate counsel were ineffective are time-barred.  Although petitioner made these general claims in his timely petition, a petitioner "does not satisfy the Rule 15 'relation back' standard merely by raising some type of ineffective assistance in his original petition, and then amending the petition to assert another ineffective assistance claim based upon an entirely distinct type of attorney malfeasance."  *United States v. Ciampi*, 419 F.3d 20, 24 (1st Cir. 2005).  *See also Davenport v. United States*, 217 F.3d 1341, 1346 (11th Cir. 2000); *United States v. Duffus,* 174 F.2d 333, 337 (3d Cir. 1999).   In this case, the petitioner asserted many new ways in which his counsel was deficient in his amended § 2255 petition—that his trial counsel was ineffective for not objecting to the indictment, for failing to ask for certain jury instructions, for failing to object to other jury instructions, that his appellate counsel failed to argue that the Court erred in denying his severance motion, failed to challenge the sufficiency of the evidence, failed to challenge the jury instructions, and failed to challenge the admission of certain evidence.  Since these claims are distinct types of attorney malfeasance—they are of a different time and type than the petitioner's timely ineffectiveness claims—they are time-barred.

C.    **Petitioner's Claims that are Procedurally Barred**

Claims already raised and rejected on direct review will not be entertained on a § 2255 motion absent extraordinary circumstances such as an intervening change in the law.  *United States v. Greene*, 834 F.2d 1067, 1070 (D.C. Cir. 1987); *Garris v. Lindsay*, 794 F.2d 722, 726–27

(D.C. Cir 1986). As a result, since the petitioner's arguments regarding the handling of the jury note about fingerprints were already rejected by the Court of Appeals on direct review, *United States v. Stover*, 329 F.3d 859, 866 (D.C. Cir. 2003), they are procedurally barred from § 2255 review. The D.C. Circuit also already rejected Stover's contention that his attorney should have been summoned and the Court should have responded to a jury note in the attorney's presence. *Id.*

### D.    Petitioner's Claims that have no Merit

In addition, the petitioner raises a number of timely claims that are without merit.[1]  First, Stover requests that his sentence be vacated pursuant to the retroactive application of *United States v. Booker*, 543 U.S. 220 (2005). (Mot. at 9.)  However, *Booker* does not apply retroactively to cases on collateral review. *United States v. Branham*, 515 F.3d 1268, 1278 (D.C. Cir. 2008) (citing *In re Fashina*, 486 F.2d 1300, 1303 (D.C. Cir. 2007)).  The petitioner's conviction became final on April 26, 2004, after the D.C. Circuit affirmed his conviction on direct appeal and the Supreme Court denied his petition for a writ of certiorari. *United States v. Stover*, 329 F.3d 859 (D.C. Cir. 2003), *cert. denied*, 541 U.S. 1018 (2004).  Therefore, Stover's conviction became final before *Booker* was decided, and *Booker* does not apply.

The petitioner also argues that venue in the District of Columbia was improper.  (§ 2255

---

[1]In addition to having no merit, the government is correct in noting that many of the timely claims are procedurally barred because they were not raised on direct appeal. The general rule (which is not applicable to ineffective assistance of counsel claims, *Massaro v. United States*, 538 U.S. 500, 504 (2003)) is that a petitioner procedurally defaults a claim when he fails to raise it on direct review. After that, the claim may only be raised in habeas if the petitioner can demonstrate "cause" and "actual prejudice" or that he is "actually innocent." *Bousley v. United States,* 523 U.S. 614, 622 (1998). Because the petitioner has failed to show cause for not previously raising his claims, they are procedurally barred in addition to being rejected for the reasons discussed in the opinion.

Motion at 18.)  The government is correct in noting, however, that a conspiracy prosecution "may be brought in any district in which some overt act in furtherance of the conspiracy was committed by any of the co-conspirators." *United States v. Haire*, 371 F.3d 833, 838 (D.C. Cir. 2004), *vacated on other grounds*, 543 U.S. 1109 (2005).  In this case, the indictment alleged (Gov't's Opp'n Ex. B) and the evidence showed that overt acts in furtherance of the conspiracy occurred in the District of Columbia.  Henry received the heroin from Lama and other co-conspirators at Union Station in the District of Columbia.  (Trial Transcript at 329, 609–610, 727–738.) Henry then supplied it to Harrison and the petitioner to cut and package the heroin. *Stover*, 329 F.3d at 864 (D.C. Cir. 2003).  Next, Harrison and the petitioner distributed heroin to street dealers in the Washington, D.C. area.  *Id*.  Many overt acts of the conspiracy took place in Washington, D.C. and the petitioner's venue argument has no merit.

The petitioner argues that the government failed to disclose evidence favorable to the defense.  The petitioner does not provide any support for this assertion nor can the Court find any, and it is rejected.

The petitioner further argues that the Court improperly instructed the jury by (1) failing to properly instruct the jury on the essential elements of conspiracy (Amended Mot. 10); (2) failing to properly instruct on single versus multiple conspiracies (Am. Mot. 12–13), (3) shifting the burden of proof by instructing on the defendant's obligation (Am. Mot. 11–12), (4) refusing to give a lesser included instruction of distributing less than one kilo of heroin (Am. Mot. 14), (5) failing to give a buyer-seller instruction (Am. Mot. 9); and (6) giving an inappropriate anti-deadlock charge. (Amended Mot. 13–14.)

In contrast to petitioner's claims, the Court did give the proper instructions.  The

petitioner argues that the Court must instruct the jury on the three elements of conspiracy (the existence of an agreement, that the petitioner intended to join the conspiracy, and participation in the conspiracy) as defined under 21 U.S.C. § 846.  (Am. Mot. 10.)  The Court did that.  (*See* Tr. at 5678-5680) ("A conspiracy is an agreement between two or more persons to join together to accomplish some unlawful purpose"; "a person may become a member of a conspiracy . . . as long as that person understands the unlawful nature of the plan and voluntarily and intentionally joins it"; "the second thing that must be shown is that the petitioner was part of the conspiracy").

In addition, the claim that the Court did not properly instruct the jury as to the possibility of multiple conspiracies is frivolous.  (Tr. 5681) ("If the government fails to prove [the conspiracy charged in the indictment], then you must find the petitioner not guilty of the conspiracy charged, even if you find that he was a member of some other conspiracy.  Proof that a petitioner was a member of some other conspiracy is not enough to convict.").  The petitioner also attempts to seize upon a mistake made by the Court while instructing as to the burden of proof.  However, the Court issued a curative instruction so that the petitioner was not prejudiced: "I misread one instruction.  I said at one point the defendant has to prove.  You understand the burden on the government always.  The burden of proof is on the government.  If I misread that at some point, just ignore that.  The government has the burden of proof here.").  (Tr. 5704.) Petitioner also asserts, without citing any case law, that a lesser included instruction should have been given regarding the amount of drugs for which the petitioner was responsible.  As noted by the government, however, at the time of the trial the precedent said that the jury did not have to make a finding on the amount of drugs attributable to the defendant, *see United States v. Webb*, 255 F.3d 890, 893 (D.C. Cir. 2001); therefore, the Court did not err in failing to instruct

regarding drug quantity.

The petitioner's assertion that the jury could not have understood that simply because the petitioner was a buyer or seller of heroin did not make him a conspirator in the absence of a "buyer-seller" instruction is similarly baseless.  In addition to the general conspiracy instruction, the Court informed the jury that there was a difference between conspiracy to possess heroin and conspiracy to possess with intent to distribute. (Tr. 5687–5688.)  These instructions were sufficient to alert the jury to the elements of conspiracy and the difference between possession and distribution.  The petitioner's final jury instruction contention is that the Court gave an incorrect anti-deadlock charge.  (Am. Mot. 13-14; Tr. 5734–35.)  The precise anti-deadlock charge used has been approved by the Court of Appeals, *United States v. Thomas*, 449, F.2d 1177, 1184 n.46 (D.C. Cir. 1971), and the petitioner's conclusory assertion that it was incorrect is unpersuasive.

The petitioner's next category of claims involve evidence that was allegedly improperly admitted, depriving him of a trial that was fundamentally fair. First, the petitioner claims that it was error to admit transcripts of intercepted conversations.  However, the Court did not admit the transcripts as evidence and gave an instruction that they were not evidence but that the tapes themselves were the evidence. (Tr. 5674).  This was sufficient to comply with Circuit law. *United States v. White*, 116 F.3d 903, 921 (D.C. Cir. 1997).  The petitioner also claims that he was prejudiced by the jury learning that some of his co-defendants had pled guilty or already been convicted.  However, the Court agrees with the government that the curative instructions (*See, e.g.*, Tr. 1362) sufficiently mitigated any prejudice that may have resulted. *See United States v. McCord*, 509 F.2d 334, 346 n.35 (D.C. Cir. 1974) (stating that judge did not abuse

10

discretion in refusing to declare a mistrial after 5 of original 7 petitioners pled guilty and the

judge gave a limiting instruction that the jury was not to draw any inference from the termination

of the other cases). The petitioner also claims he was prejudiced when the jury learned that his

co-defendant had been incarcerated since his arrest.  Even if the petitioner was prejudiced, the

Court gave an immediate curative instruction that was sufficient to mitigate any prejudice that

may have resulted. *See United States v. Moreno*, 933 F.2d 362, 368 (6th Cir. 1991) (curative

instruction sufficient to cure any possible prejudice after inadvertent error led jury to observe

petitioners in shackles).  Additionally, petitioner challenges the admission of photographs of him

that were seized during the search of the apartment at 2602 Brinkley Road.  While these

photographs may have been prejudicial in that they linked the petitioner to the crime, this is not

the meaning of prejudicial for purposes of Rule 403. *United States v. Sanders*, 95 F.3d 448, 453

(6th Cir. 1996) ("Evidence that is prejudicial only in the sense that it paints the petitioner in a bad

light is not unfairly prejudicial pursuant to Rule 403.").

The petitioner further claims that the evidence was constitutionally insufficient to support

a verdict that Stover was a member of a single conspiracy as charged in the indictment rather

than a member of one of multiple conspiracies.  The petitioner's claim is without merit.  "A

single conspiracy may be established when each coconspirator knows of the existence of the

larger conspiracy and the necessity for other participants, even if he is ignorant of their precise

identities." *Haire*, 371 F.3d at 837 (citations omitted).  In this case, not only was petitioner

Stover aware of the central conspiracy, the evidence showed that he played a central role.  The

petitioner's co-conspirator Harrison was the "hub" of the conspiracy, and Stover was Harrison's

right-hand man. *Stover*, 329 F.3d at 863.  Harrison and Stover were involved in almost every

aspect of the conspiracy; they bought the imported heroin, diluted it with cutting agents, placed it

into bags for street sales, and distributed it for sale in the Washington D.C. and Baltimore area.

Additionally, the petitioner raises numerous ineffective assistance of counsel arguments.

A petitioner may bring a claim of ineffective assistance of counsel "in a collateral proceeding

under § 2255, whether or not the petitioner could have raised the claim on direct appeal."

*Massaro v. United States*, 538 U.S. 500, 504 (2003).  Stover argues that his trial counsel was

ineffective for 1) failing to present an *Apprendi* objection, 2) failing to move for a severance, 3)

failing to ask the court to suspend jury deliberations when the jury sent a note asking to review

evidence, 4) failing to request the correct jury instructions, and 5) failure to move for dismissal of

his charges based on lack of venue.  In order to establish ineffective assistance of counsel, the

petitioner must establish that his counsel's performance was deficient and that the deficient

performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

First, the severance claims are rejected because these claims are refuted by the record.

The record shows that trial counsel did move for severance of the defendants. (Tr. 4455, 4503.)

Second, the petitioner cannot show that he was prejudiced by his trial counsel's failure to make

an *Apprendi* claim, because at that time an *Apprendi* objection would have been non-meritorious.

*Infra* at 14.

Petitioner also claims his trial counsel was ineffective for failing to request that the jury

suspend deliberations.  The relevant facts are that on January 5, 2000, the courtroom was cleared

and the jury had access to all of the evidence in the case, including all evidence against the

petitioner.  (Gov't's Opp'n at 54.)  At some point, the evidence was temporarily moved to allow

for another court proceeding.  (*Id.*)  While the evidence was removed, the jury sent two notes

12

indicating that it had reached a verdict on co-defendant Lisa Harrison and requesting all of the

evidence concerning Stover. (Am. Mot. 17.)  Before the evidence could be assembled and given

to the jury, the jury sent another note stating that it had reached a verdict on Stover. (*Id.*)  Stover

has not demonstrated that he was prejudiced by his counsel's omission.  The jury already had

time to review the evidence against Stover in the previous days, and the petitioner does not

demonstrate how another review of the evidence would have favorably affected the verdict.

Petitioner's next challenge to his trial counsel's performance is that his counsel failed to

request the correct jury instructions.  The petitioner has failed to specify which instructions were

incorrect, and, regardless, the jury instructions given were correct.  *Supra* at 9.

The petitioner also argues that his trial counsel was ineffective for failing to object to

venue in the District of Columbia.  As discussed *supra*, venue was clearly proper in the District

of Columbia.  As a result, counsel cannot be ineffective for failing to make this argument.

*United States v. Sayan*, 968 F.2d 55, 65 (D.C. Cir. 1992) ("A lawyer is not 'ineffective' when he

fails to file a meritless motion.").

Next, the petitioner makes a number of claims that his appellate counsel was ineffective.

He argues that his counsel was ineffective for failing 1) to challenge venue, 2) to raise an

*Apprendi* argument, and 3) to object to the Court's use of a formula to determine the drug

quantity attributable to the petitioner.

As discussed above, a venue challenge is meritless, and therefore petitioner's

ineffectiveness claim based on his lawyer's failure to assert this challenge is similarly meritless.

As for the *Apprendi* challenge, petitioner was not prejudiced by his appellate counsel's failure to

assert this argument.  Petitioner's conviction became final on April 26, 2004.  This was after

13

*Apprendi* was decided, but before *Blakely v. Washington*, 542 U.S. 296 (2004) was decided (June 24, 2004).  During the time between *Apprendi* and *Blakely* (the time of petitioner's direct appeal), federal courts held that *Apprendi* did not apply to cases in which offense characteristics enhanced a sentence under the Sentencing Guidelines but did not increase the sentence above the statutory maximum for the offense of the conviction.  *United States v. Samuel*, 296 F.3d 1169, 1173 (D.C. Cir. 2002); *United States v. Fields*, 251 F.3d 1041, 1043–44 (D.C. Cir. 2001); *In re Sealed Case,* 246 F.3d 696, 698 (D.C. Cir. 2001).  The statutory maximum sentence for Stover was 30 years, which is what Stover received.  21 U.S.C. § 841(b)(1)(C) (provision applicable to those with a prior felony drug conviction).  Therefore, at the time of his appeal, Stover fell into the category in which courts held *Apprendi* did not apply.  As a result, an *Apprendi* argument on appeal would not have been successful, and the petitioner's appellate counsel was not ineffective for failing to assert it.

Finally, the petitioner asserts that his appellate counsel was ineffective for failing to challenge the drug quantity calculation on direct appeal.  This argument has merit.  In order to prevail on a claim of ineffective assistance of counsel, a petitioner must establish (1) that his counsel's performance was deficient because the counsel did not act reasonably under prevailing professional norms, and (2) that the deficient performance prejudiced his defense.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In this case, the D.C. Circuit reviewed Stover's conviction along with three of his co-defendants. *United States v. Stover*, 329 F.3d 859 (D.C. Cir. 2003).  In calculating the defendants' original sentence, this Court, on the basis of expert testimony, calculated that the heroin obtained by defendants was diluted to 20% purity before it was sold on the street and therefore multiplied the amount of imported heroin by four to obtain

14

the amount of drugs for which the defendants were responsible. The three co-defendants

challenged the Court's determination that the heroin sold by the conspirators was diluted to 20%

purity, on the basis of the heroin that was actually seized in the case had purity levels between

27%-29%. *Id.* at 873. Stover's counsel, however, inexplicably did not join the co-defendants in

challenging the Court's drug quantity calculation. Therefore, when the Circuit agreed with the

co-defendants that the drug calculation was a "clear error" on the part of this Court, Stover's

original sentence remained because of his counsel's failure to challenge the calculation. Given

that all of Stover's co-defendants made this argument, combined with the fact that the failure

prejudiced Stover's ability to obtain a resentencing, Stover appears to have met the elements of

ineffective assistance counsel in this case. This conclusion, combined with the government's

acknowledgment that Stover's appellate counsel may have been deficient in this regard (Gov't's

Opp'n at 59), leads the Court to conclude that an evidentiary hearing is not needed and that

Stover's current sentence should be vacated and he should be resentenced in accordance with the

calculation espoused by the Circuit in his direct appeal.

Stover raises two additional matters in separate motions pending before the Court. First,

Stover asserts that he has not had access to all of his trial transcripts, and therefore the limitations

period should be equitably tolled so that the state can provide Stover with a transcript, and he can

have an opportunity to review it and present additional arguments. First, it is appears that Stover

did have access to his transcripts. Attached to his motion requesting a copy of his presentence

report, filed March 14, 2005, Stover attached letters that he had sent to the Georgetown

University Law Center and George Washington University Law School requesting assistance in

preparing his collateral attack petition. In his letters, Stover states, "*I already have my trial and*

*sentencing transcripts*, as well as copies of other documents that may be necessary to conduct a review of the proceedings to determine available claims." (Ex. to March 24, 2005 motion (letters to law schools dated January 29, 2005) (emphasis added)). In addition, Stover remained in possession of portions of his transcript throughout the time that he filed his habeas petition and his amended habeas petition. (*See, e.g.*, Am. Mot. 15) (citing portions of the trial transcript). Stover apparently had access to his transcript during direct review and whatever portions of the transcript he was lacking thereafter did not prevent him from filing his habeas petition and presenting numerous claims, and those claims have been carefully considered by this Court. While it is true that 28 U.S.C. § 753(f) allows for the provision of free transcripts in preparation for a habeas petition, it does not require it. *United States v. MacCollom*, 426 U.S. 317, 325 (1976) (plurality opinion). In this case, the Court determines that all of petitioner's arguments are either frivolous, procedurally barred, or do not require the assistance of a transcript.

Other federal courts are in agreement that a petitioner's inability to obtain a trial transcript during the habeas stage is not grounds for equitably tolling the statute of limitations. In *Lloyd v. Van Natta*, 296 F.3d 630 (7th Cir. 2002), the petitioner attempted to challenge his state court conviction by way of a writ of habeas corpus under 28 U.S.C. § 2254. The petitioner argued that because he could not obtain his entire transcript, he was unable to present his strongest arguments to the court. In rejecting the petitioner's argument, the Seventh Circuit noted that because habeas petitions do not need to be pleaded with particularity and because the petitioner was able to provide sufficient factual support for his claims without possessing the complete transcript, the state's failure to provide the petitioner with a transcript did not prevent him from pursuing any claims and therefore the statute of limitations would not be equitably tolled. *Id.* at

16

632; *See also Rickard v. Burton*, 2 Fed. Appx. 469, 470 (6th Cir. 2001) (stating that the petitioner

"has no constitutional right to a transcript to prepare for a post-conviction proceeding."); *Ruark*

*v. Gunter,* 958 F.2d 318, 319 (10th Cir. 1992) (same).

Stover also argues that the Court should issue a stay of his § 2255 proceedings while he

challenges his state court convictions that were used as a part of his sentencing calculus. "The

decision to grant or deny a motion to stay proceedings is left to the sound discretion of the court,

in light of the particular circumstances of the case." *United States ex. rel. Westrick v. Second*

*Chance*, No. 04-280, slip op. at *2. In this case, there does not appear to be any particular

circumstances that would warrant a stay. Stover argues that the proceeding should be stayed in

the event that he is successful in his state court challenges, because judicial resources will be

preserved by only resentencing Stover once. However, Stover has merely stated that he is

challenging his state court convictions and has not presented any argument that he is likely to

succeed on his claims. In addition, although conserving judicial resources is a laudable goal, the

Court must also observe the policy goals of the AEDPA:

> "Staying a federal habeas petition frustrates AEDPA's objective of encouraging
> finality by allowing a petitioner to delay the resolution of the federal proceedings.
> It also undermines AEDPA's goal of streamlining federal habeas proceedings by
> decreasing a petitioner's incentive to exhaust all his claims in state court prior to
> filing his federal petition."

*Rhines v. Weber*, 544 U.S. 269, 277 (2005).

Accordingly, the Court will not exercise its discretion in favor of staying the proceedings

in this case.

## III.   CONCLUSION

For the reasons set forth in this opinion, the Court finds that petitioner Stover's claims are

meritless, with the exception of his claim that he should be entitled to resentencing on the basis

of the amount of drugs that are attributable to him.  Accordingly, Stover's § 2255 motion is

GRANTED in part.  His sentence is VACATED and the Court will schedule a resentencing

hearing. Stover's other claims are meritless and therefore his motion is DENIED in all other

respects.  His motion for a stay and motion for production of transcripts are also DENIED.


A separate order shall issue this date.

SO ORDERED.


_Royce C. Lamberth_                    _9/19/08_

Chief Judge Royce C. Lamberth              Date